IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN WILLIAM GATTIS,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>Case No. 4:19-cr-00010-DN<br><br>District Judge David Nuffer |

Defendant filed a motion seeking compassionate release ("Motion").[1] The government opposes the Motion.[2] The United States Probation Office prepared and filed a report.[3] Because Defendant fails to demonstrate that extraordinary and compelling reasons warrant compassionate release, the Motion is DENIED.

## DISCUSSION

### The Motion is procedurally proper

"The First Step Act . . . modified 18 U.S.C. § 3582(c) to allow a defendant federal prisoner to file [a] motion [for compassionate release or a sentence modification] with the court him or herself."[4] However, to file such a motion, a defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of

---

[1] Motion for Compassionate Release ("Motion"), docket no. 45, filed Jan. 25, 2021.

[2] United States' Opposition to Defendant's Emergency Motion for Compassionate Release and Reduction of Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i) ("Response"), docket no. 48, filed Feb. 2, 2021.

[3] First Step Act Relief Eligibility Report ("Report"), docket no. 47, filed under seal Jan. 29, 2021.

[4] *United States v. Williams*, No. 2:17-cr-00417-DAK, 2020 WL 806026, *1 (D. Utah Feb. 18, 2020) (citing 18 U.S.C. § 3582(c)(1)(A); *United States v. Willis*, 382 F.Supp.3d 1185, 1187 (D. N.M. 2019)).

the defendant's facility, whichever is earlier."[5] If one of these requirements is satisfied, "a court may reduce a defendant's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction,' and that such reasons 'could not reasonably have been foreseen by the court at the time of sentencing.'"[6] In making this determination, the court must also consider the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable.[7] A defendant has the burden of showing extraordinary and compelling reasons warrant a sentence reduction.[8]

Defendant submitted a request for relief under the First Step Act to the warden at FCI Sheridan on October 30, 2020.[9] The warden's response to the request, if any, is not in the record.[10] Defendant filed this Motion on January 25, 2021. Therefore, the Motion is procedurally proper, and its merits may be addressed.[11]

### Defendant fails to demonstrate extraordinary and compelling reasons to warrant compassionate release

Defendant argues that extraordinary and compelling reasons exist to warrant compassionate release because of his medical conditions (obesity and hypertension) which place him in the high-risk category for serious complications or death if he contracts COVID-19.[12]

Defendant is 50 years old and has served approximately 31 months (~37%) of his 84-month prison sentence.[13] Defendant has a BMI of 34.6 and has gained approximately 20 pounds

---

[5] 18 U.S.C. § 3582(c)(1)(A).

[6] *Williams*, 2020 WL 806026, *1 (quoting 18 U.S.C. § 3582(c)(1)(A)(i); 28 C.F.R. § 571.60).

[7] 18 U.S.C. § 3582(c)(1).

[8] United States v. Billings, No. 19-CR-00099-REB, 2020 WL 4705285, at *2 (D. Colo. Aug. 13, 2020).

[9] Docket no. 45-1, filed Jan. 25, 2021.

[10] Defendant states in the Motion (at 5) that he received no response from the warden.

[11] 18 U.S.C. § 3582(c)(1)(A).

[12] Motion at 15-16.

[13] Report at 1.

during the pandemic.[14] He suffers from hypertension, which he has controlled previously via prescriptions, diet, and exercise, or some combination of the three.[15] Due to current social-distancing regulations at the prison, Defendant asserts that he is confined to his cell and is unable to access exercise equipment. He also states that he suffers from recurrent ear infections and has teeth erupting into his sinus cavity.[16] Defendant asserts that many of his fellow prisoners at FCI Sheridan have been diagnosed with COVID-19, and the conditions of confinement are such that he is unable to practice CDC guidelines for social distancing.[17] Defendant is accordingly concerned that he may contract COVID-19, and if he does, due to his health conditions, suffer adverse health consequences or even death.[18]

The phrase "extraordinary and compelling reasons" is not defined in the statute. While the United States Sentencing Commission ("USSC") has issued a policy statement which defined the phrase "to include serious medical conditions and the age of the defendant,"[19] the Tenth Circuit has recently held that "the [USSC] existing policy statement is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants."[20] Because the Motion was filed by Defendant, the policy statement is inapplicable, and district court possess "the authority to exercise [their] independent discretion to define the term 'extraordinary and compelling reasons.'"[21] However, the policy statement's definition of

---

[14] Motion at 5.

[15] *Id*. at 15-16.

[16] *Id.* at 17.

[17] *Id.* at 14-15, 18.

[18] *Id.* at 18-19.

[19] *Williams*, 2020 WL 806026, *1 (quoting *United States v. Gutierrez*, No. CR 05-0217 RB, 2019 WL 2422601, *2 (D. N.M. June 10, 2019)).

[20] United States v. McGee, 992 F.3d 1035, 1050 (10th Cir. 2021).

[21] United States v. Carr, 851 F. App'x 848, 853 (10th Cir. 2021) (unpublished).

the phrase provides a "persuasive, albeit not controlling, illustration of extraordinary and compelling reasons that warrant a reduction in sentence —e.g., the defendant's terminal illness, advanced age, debilitating medical condition, or the death or incapacitation of the sole caregiver for the defendant's minor children."[22]

Defendant fails to demonstrate that his medical conditions constitute extraordinary and compelling reasons. Defendant does not assert that he is suffering from a terminal illness. Defendant does argue he is suffering from obesity and hypertension, which could potentially increase his risk of serious injury or death from COVID-19, as well as ear infections and dental issues.[23] However, there is nothing in the record to suggest those conditions cannot be treated and managed while in prison. Defendant's medical records indicate that he is receiving medical attention, treatment, and medication for his conditions.[24] Indeed, medical records reveal that Defendant's hypertension has signifyingly improved in the last year, and was found to be "resolved" in October 2020.[25] While Defendant's blood pressure had risen to hypertensive levels[26] two weeks after that finding[27], his earlier improvement in blood pressure suggests his condition can be controlled while incarcerated or even locked down. Even with the COVID-19 pandemic, numerous courts have concluded that obesity or obesity and controllable hypertension do not constitute compelling reasons warranting compassionate release.[28] Defendant has also not

---

[22] United States v. Blair, No. 17-CR-00079-CMA, 2021 WL 2375872, at *1 (D. Colo. June 10, 2021).

[23] Motion at 15-17.

[24] Defendant's 2020 Medical Records, docket no. 46-1, filed under seal January 25, 2021.

[25] *Id*. at 5.

[26] See https://www.cdc.gov/bloodpressure/about.htm (last accessed Sep. 9, 2021).

[27] Defendant's 2020 Supplemental Medical Records, docket no. 46-2, filed under seal January 25, 2021, at 9.

[28] See Billings, 2020 WL 4705285 at *5 (collecting cases).

cited any authority that his recurrent ear infections or dental issues make him more susceptible to COVID-19 or increase the danger of him contracting COVID-19.

There is also only the potential that Defendant may contract COVID-19 while in BOP custody. The potential of contracting COVID-19 still exists if Defendant is granted compassionate release. Defendant has not stated whether he is vaccinated, whether he is able to be vaccinated[29], or whether he has had COVID-19 in the past.

The BOP has implemented stringent protocols in order to stop any spread of COVID-19 to inmates and staff. These protocols include:

- Only limited group gathering is permitted to facilitate commissary, laundry, showers, telephone, and computer access;

- All staff and inmates have been and will continue to be issued face masks and encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved;

- All newly admitted inmates are screened for COVID-19 exposure and symptoms;

- Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff;

- Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation;

- Prison staff and other visitors are temperature checked before entering the facilities, and any staff member with a temperature of 100.4 degrees Fahrenheit or higher is barred from the facility;

- Official travel for prison staff, and most training, has been suspended;

- Social visits at facilities have been limited, and have been suspended at the facility in which Defendant is housed[30];

---

[29] At the time the Motion was filed, Defendant argued it was unclear "whether the general [prison] population will receive a vaccine." Motion at 10. Currently, the Board of Prisons website states that "BOP is committed to making the vaccine available to all staff and inmates who wish to receive it as quickly as possible." https://www.bop.gov/coronavirus/ (last visited Sep. 9, 2021).

[30] https://www.bop.gov/locations/institutions/she/ (last visited Sep 9, 2021).

- Social distancing between inmates and visitors has been enforced; and
- Expanded COVID-19 testing for inmates.[31]

Despite these protocols and precautions, FCI Sheridan has not entirely avoided the COVID-19 pandemic. There are currently 1 staff member and 22 inmates with confirmed active COVID-19 cases, out of a total population of 1,572 total inmates.[32] The current infections represent a small fraction of the total prison population, roughly 1.3%.[33] If he is granted compassionate release, Defendant may be able to exercise more personal control over the possibility of contracting COVID-19, and it is conceivable he could better manage his obesity and hypertension. But on this record, Defendant has not met his burden of showing that his relatively minor medical conditions, combined with the conditions at FCI Sheridan, constitute extraordinary and compelling reasons to grant him his release.

Defendant also argues that compassionate release is appropriate because he would be able to assist in care for his ailing mother.[34] However, Defendant does not specify if his mother has any other potential caregivers or if she is able care for herself alone. Accordingly, this argument does not constitute extraordinary and compelling reasons.

Even if Defendant's medical condition and the COVID-19 pandemic constituted extraordinary and compelling reasons, the relevant factors set forth in 18 U.S.C. § 3553(a) (including those which direct a court to consider the safety of the community) do not support granting Defendant compassionate release. Defendant was convicted of one count of Possession

---

[31] https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sep. 9, 2021).

[32] https://www.bop.gov/coronavirus (last visited Jan. 29, 2021).

[33] https://www.bop.gov/locations/institutions/she/ (last visited Sep 9, 2021).

[34] Motion at 20.

With Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1).[35] He was found in possession of over 900 grams of methamphetamine.[36] Defendant's criminal history includes convictions for battery (in which he punched an unidentified female in the face and then ran from police), disturbing the peace (during which he reportedly choked his girlfriend, threatened to kill her, and hit a bystander on head with a glass object), and multiple convictions over the last 20 years for manufacturing and trafficking methamphetamine.[37] Defendant was sentenced to 84 months imprisonment subject to a plea agreement with the government.[38] Defendant was also sentenced to a 60-month term of supervised release.

The serious nature and circumstances of Defendant's offense, the appropriateness of the original 84-month prison sentence, and the need to protect the public from further crimes weigh heavily against granting relief to Defendant. Even considering Defendant's lack of disciplinary history and his academic accomplishments while incarcerated, Defendant pled guilty to a serious crime and agreed to a length of incarceration he is now bound to serve out. Therefore, Defendant has failed to demonstrate that his conditions and circumstances (considered individually or collectively) justify granting him compassionate release.

### Jurisdiction is lacking over Defendant's request for home confinement

Defendant also requests that he be permitted to serve the remainder of his sentence in home confinement.[39] However, the authority to designate the place of an inmate's incarceration rests with the BOP, not the sentencing court.[40] "The [BOP] is given this responsibility because

---

[35] Judgment in a Criminal Case ("Judgment") at 1, docket no. 40, filed July 9, 2019.

[36] Presentence Investigation Report, docket no. 47-1, filed January 29, 2021, at 6.

[37] *Id*. at 8-14.

[38] Judgment at 2.

[39] Motion at 20-21.

[40] 18 U.S.C. § 3621(b); *United States v. Miller*, 594 F.3d 1240, 1242 (10th Cir. 2010).

the executive branch and not the judicial branch is responsible for administering sentences."[41] And "[n]otwithstanding any other provision of law, a designation of a place of incarceration [by the BOP] is not reviewable by any court."[42] Therefore, jurisdiction is lacking over Defendant's request for home confinement.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion[43] is DENIED.

Signed September 20, 2021.

BY THE COURT

David Nuffer
United States District Judge

---

[41] *United States v. Voda*, 994 F.2d 149, 151-152 (5th Cir. 1993) (internal citations omitted).

[42] 18 U.S.C. § 3621(b).

[43] Docket no. 45, filed January 25, 2021.